## 5462.　GODDARD *v.* WATTERS.

1. Fright may be considered an element of damages, where physical injury attends the cause of the fright, or where the fright is of such nature as to produce physical or mental impairment directly and naturally resulting from the wrongful act.

2. To recover damages on account of physical injuries resulting from fright, where there is no actual immediate personal injury, it must appear that the injuries were the natural and proximate result of the fright or shock, and that the defendant could or should have known that the act producing the injuries would with reasonable certainty cause such a result; and it must appear that the injuries resulted from such gross carelessness, coupled with a knowledge of the probable physical results, as amounted to wilful and reckless disregard of consequences; or that the fright (with its consequences) was brought about by a deliberate and malicious intention on the part of the defendant to injure the plaintiff.

DECIDED JULY 7, 1914.

Action for damages; from city court of Floyd county—Judge Reece.　January 3, 1914.

Mary Goddard brought a suit for damages against A. W. Watters, alleging, that she was the lawful wife of Lee Goddard, and that on or about January 3, 1913, Watters came to her house, called her husband outside the house, and addressed him in loud tones and with abusive language, which attracted her attention and drew her to the door, and she saw him unjustifiably assault her husband "by drawing a revolver on him with intent to injure him;" that she was then and had been for several months pregnant with child, and Watters knew her condition and knew that she was in the house, "but, notwithstanding, he wilfully and maliciously assaulted" her husband as aforesaid; that the assault and the imminent danger of death in which her husband was placed "so frightened [her] as to cause a great nervous shock, and, in her weak and nervous condition, was such as to prostrate her and cause great pain and suffering, and did cause her to be delivered prematurely of the said child three days after the aforesaid assault, . . causing unnecessary pain and suffering and permanently injuring [her], in that her generative organs have never contracted to their normal size, and are much inflamed and swollen from undue strain placed upon them because of said nervous shock, and that [she] has suffered and still suffers from continual headaches and nausea, and is unable to leave her bed, and has undergone great pain and suffering."　She alleged further that she had been permanently dam-

aged, in that she would never be in complete physical and nervous
health again, and would be confined to her bed; and that her earn-
ing capacity was destroyed, as she would never again be able to
perform any manual labor; and that because of the injuries alleged,
she was damaged in the sum of $10,000.

The defendant demurred on the following grounds: (1) Be-
cause the petition does not set forth a cause of action. (2) Because
it shows on its face that the fright from which the plaintiff suf-
fered was occasioned by her going to the scene of the alleged trou-
ble of her own motion. (3) Because the plaintiff has no right to
recover damages for the alleged assault upon her husband. The
court sustained the demurrer and dismissed the petition, and the
plaintiff excepted.

*Seaborn Wright, Denny & Wright, Graham Wright,* for plaintiff.
*M. B. Eubanks,* for defendant.

WADE, J. (After stating the foregoing facts.) Taking in re-
verse order the points raised by the demurrer, we first consider the
suggestion that the plaintiff has no right to recover damages for an
assault upon her husband. We do not consider, under the allega-
tions made in the petition, that this question is involved, since it
appears that plaintiff is seeking to recover for independent damage
resulting directly to her on account of or as a consequence of an
alleged wilful and malicious assault made upon her husband by the
defendant, with knowledge of the fact that she was pregnant and
in close proximity when the assault was made. The objection that
the petition shows on its face that the fright from which the plain-
tiff suffered was occasioned by her own act, in approaching the
scene of the alleged disturbance, we do not consider well taken, since
her conduct in the premises was a natural consequence which
should have been anticipated by the fomentor of the disturbance;
and the party guilty of the tort must be held liable for the reason-
able and natural consequences to be anticipated therefrom. When
the plaintiff's husband was called from the house and from her
presence, and loud and abusive language, addressed to him by the
defendant, thereafter reached her ears, the call of both nature and
affection must have irresistibly drawn her to the door of the house,
where she could discover the cause of the disturbance and the degree
of danger, if any, that threatened her husband. This consequence

should have been apprehended or expected by the one charged with using loud and abusive language, if any measure of deliberation entered into his conduct.

The first ground of the demurrer presents a somewhat more difficult question. In the case of *Williamson* v. *Central Railway Co.,* 127 *Ga.* 125, 131 (56 S. E. 119, 122), it is said that "it is clear that the defendant is liable to the plaintiff for all elements of damages which legitimately flow from the tort," but that "as a general rule, damages for mere fright are not recoverable. See *State Mutual Life Asso.* v. *Baldwin,* 116 *Ga.* 860 [43 S. E. 262] ; *Mabry* v. *City Electric Co.,* Id. 624 [42 S. E. 1025, 59 L. R. A. 590, 94 Am. St. R. 141] ; *Cole* v. *Atlanta R. Co.,* 102 *Ga.* 478 [31 S. E. 107] ; *Chapman* v. *Telegraph Co.,* 88 *Ga.* 763 [15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183]." It is said further, however, that "There, of course, may be instances where fright may be considered as an element of damages, but they should be restricted to where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act. Under any other conditions, fright should be regarded as mere emotion, and not sufficiently substantive to be the basis of a recovery for damages. See also, in this connection, Joyce on Dam. §§ 220, 221." In *Bray* v. *Latham,* 81 *Ga.* 640 (8 S. E. 64), it is held that "wrongfully to cause, aggravate, or protract illness is an injury to health," and that such a tort may be redressed by damages. It appears to be clear, under the ruling in the *Chapman* case, supra, that one may not recover damages for mental pain and suffering alone, brought about by the negligence of a defendant; but on the other hand, as intimated with equal clearness in the case of *Williamson* v. *Central Railway Co.,* supra, it is otherwise "where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act." In the case of *Dunn* v. *Western Union Telegraph Co.,* 2 *Ga. App.* 845, 846 (59 S. E. 189), it is held that "While mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered

in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary, or intentional wrong, the natural result of which is the causation of mental suffering and wounded feelings."

In Gulf &c. R. Co. v. Trott, 86 Tex. 412 (25 S. W. 419, 40 Am. St. R. 866), and in San Antonio &c. R. Co. v. Corley, 87 Tex. 432 (29 S. W. 231), the Supreme Court of Texas denies the right of recovery for fright when it is neither attended nor followed by any other injury; but the same court, in the case of Hill v. Kimball, 76 Tex. 210 (13 S. W. 59, 7 L. R. A. 618), sustained a recovery where a miscarriage was caused by a mental shock unaccompanied by any physical violence whatever to the person of the injured woman. And in Gulf &c. R. Co. v. Hayter, 93 Tex. 239 (54 S. W. 944, 77 Am. St. R. 856, 47 L. R. A. 235), the court held that where a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party may recover damages, if the act or omission is the proximate cause of the injury in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. The rule declared by the New York Court of Appeals, that no recovery can be had for injuries due solely to fright and excitement, unaccompanied by actual, immediate, personal injury, does not apply to cases of wilful tort. Preiser v. Wielandt, 48 App. Div. 569 (62 N. Y. Supp. 890).

It has been held in several cases that one who engages in a quarrel with the husband of an enceinte woman, in her hearing, without knowledge of her presence or condition, is not liable for a miscarriage. 1 Sutherland on Damages (3d ed.), 76, and cases there cited. But it was held in the case of Engle v. Simmons, 148 Ala. 92 (41 Southern, 1023, 7 L. R. A. [N. S.] 96, 121 Am. St. R. 59, 12 Ann. Cas. 740), that one who causes nervous excitement in a pregnant woman by a wrongful trespass upon her home, to such an extent as to cause her to miscarry, is liable to her for the bodily pain and suffering endured which may be traced directly to the wrongful act, though no physical violence be done to her person. And it was held in Watkins v. Kaolin Manufacturing Co., 131 N. C. 536, 540 (42 S. E. 983, 60 L. R. A. 617), that an action will lie for physical injury or disease resulting from fright or nervous shock caused by negligent acts; but it was further held in that case

that it must also appear that the defendant could or should have known that such negligent acts would, with reasonable certainty, cause such result, or that the injury resulted from gross carelessness or recklessness, showing utter indifference to the consequences which should have been contemplated by the party at fault; and further, that it must appear, as a condition precedent to recovery in such cases, that the defendant must or ought to have known that the perilous condition or position of the plaintiff demanded from him the exercise of care.

From the cases referred to, and from many others examined, we draw the conclusion that no recovery can be had for fright alone, caused by negligence merely, unless the negligence is so gross as to show a wanton disregard of the consequences on the part of the person causing the injury, and the physical injury resulting is one which would naturally flow as a consequence of the act complained of, so that the defendant must have foreseen the results which followed; or if, as held in the case of *Dunn* v. *Western Union Telegraph Co.,* supra, the wrong against the plaintiff was wanton, voluntary, or intentional, the defendant may be held liable for the natural and direct resulting effects. To put the matter in condensed form, it appears that no recovery can be had on account of fright alone, caused by less than such gross negligence on the part of one acquainted with the condition of the plaintiff, or with the facts and circumstances surrounding the plaintiff, as would authorize the conclusion that the defendant must have known that certain definite physical injuries would naturally flow from or follow the fright or nervous excitement brought about by him; or unless the fright, resulting in physical injuries or impairment of health, should have been brought about deliberately, maliciously, or wantonly by the defendant, through an utter disregard of the natural and probable consequences to the injured party, or from a wilful intent so to injure the party.

In the case under consideration, while it is alleged in the fifth paragraph of the petition that the defendant knew that the plaintiff was pregnant and had been for several months preceding the date when he created the disturbance with her husband, and knew that she was in the house near which he assaulted her husband by drawing a revolver on him with intent to injure, and while there is an allegation that he nevertheless wilfully and maliciously assaulted her husband as aforesaid, it is not alleged that the defendant com-

mitted the assault with the wilful and malicious purpose of thereby injuring and damaging the plaintiff by causing such a nervous shock to her as might result in serious consequences on account of her known condition at the time; but, construing the allegation most strongly against the pleader, the wilful malice charged appears to qualify the character of the assault alleged to have been made. There is no suggestion in the petition that the defendant could or should have known what the natural and probable result of any nervous shock to her might be, nor does it appear with any degree of certainty, from the allegations in the petition, that the defendant was prompted by any desire to injure or impair the health of the plaintiff when he engaged in the altercation with her husband, or that he did anything through malice towards her or in wanton disregard of her rights or physical well-being. It is true he visited her home and called her husband from the house, and thereafter engaged in a wordy dispute with him, sufficiently noisy to attract her attention and to call for her presence; and it appears that he drew and presented against the person of her husband a deadly weapon; all of which was calculated to alarm, distress, and greatly shock her, and might have produced or brought about the premature birth of her child and the resulting injuries charged; yet the fact that the defendant sought to withdraw her husband from her presence before commencing any dispute or altercation, indicates that his intention and purpose was to adjust his differences with the husband without any disturbance to the wife, and without alarming her in any way, and perhaps in a peaceable and quiet manner—since it does not appear that the defendant even contemplated any disturbance originally. Surely nothing here indicates that the defendant was unmindful of the delicate condition of the plaintiff, or of the results which might flow from any excitement or alarm his conduct might cause. At all events, it is not alleged in so many words or in legal effect that the defendant, in the conduct complained of, was actuated by wanton malice against her, but the only wantonness or maliciousness charged appears to characterize his conduct towards her husband. If his voice, raised under the natural excitement of the occasion, caused her to approach the door of the house, it does not appear, from any allegation in the petition, that it was so raised in order to attract her attention and draw her to the scene of the

difficulty, but he may have raised his voice unwittingly, under such excitement. Nor does it appear that in presenting a pistol at and against the person of her husband, the defendant did so with the deliberate purpose to excite, alarm, or shock her and thereby bring about any disastrous consequence to her. So far as the petition shows, the defendant was not even conscious of the fact that the plaintiff had arrived on the scene at the time he assaulted her husband.

Again, it does not appear, from any specific allegation in the petition, how or in what manner the nervous shock to the plaintiff prostrated her, caused her great pain and suffering, and caused her to be delivered prematurely of the child then en ventre sa mere, nor how long the alleged premature birth occurred before the termination of the usual period of gestation—whether weeks before, or hours before the event was expected to happen. It does not appear, from the allegations in the petition, that the premature birth, whether premature by hours or weeks, was the sole cause of the pain and suffering which the plaintiff underwent at the time her child was born; and, from the allegations touching the sequelæ of childbirth, it does not clearly appear that the occurrence of the birth before the expected time was the exclusive proximate and producing cause of the injuries to the health of plaintiff, or how far they contributed thereto. Having in mind the strictness of the rule in this State as to recoveries on account of consequences resulting from fright, and bearing in mind, as decided in *Williamson* v. *Central Railway Co.*, supra, that such recoveries must be confined to instances where there is physical injury attending the cause of fright, or where, if there is no such physical injury, the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act, we are constrained to hold that the general demurrer to the petition was properly sustained.        *Judgment affirmed.*

RUSSELL, C. J., dissenting. I concur in the principles announced in the headnotes, but since I think the allegations of the petition sufficiently charging the defendant with gross negligence, to withstand the demurrer, it is my opinion that the court erred in dismissing the petition.