**Natalie Meleck MURPHY, as Next Friend of Joshua Murphy, Plaintiff,**

v.

**AVENTIS PASTEUR, INC., Individually and as Successor–in–Interest to Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; Wyeth (f/k/a American Home Products Corporation); Smithkline Beecham Corporation, d/b/a GlaxoS-**

---

mithKline; Eli Lilly and Company; Merck & Co., Inc.; Georgia Power Company [1]; Savannah Electric and Power Company; American Dental Association; and Georgia Dental Association, Defendants.

No. 02–CV–2257.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 24, 2003.

the unnamed Plaintiff's future payments in evaluating the amount in controversy.

1. By an order dated November 15, 2002, the allegations against the Georgia Power Company were dismissed without prejudice.

Roger C. Wilson, Evert & Weathersby, Atlanta, Shawn Khorrami, phv, Dylan Franklin Pollard, Law Office of Shawn Khorrami, Van Nuys, CA, for Natalie Meleck Murphy, as Next Friend of Joshua Murphy, plaintiff.

Mary Diane Owens, Bradley S. Wolff, Swift Currie McGhee & Hiers, Lowell Steven Fine, Karen M. Raby, Alembik Fine & Callner, Robert D. Hays, Matthew Scott Harman, Michael R. Powers, King & Spalding, Atlanta, Barclay Manley, phv, Fulbright & Jaworsky, Houston, TX, Kenneth P. McDuffie, George R. Neuhauser, Nall & Miller, Atlanta, Jeffrey A. Kruse, phv, Shook Hardy & Bacon, Kansas City, MO, William Bradley Hill, Jr., Joseph C. Sharp, Patricia Fortune Ammari, Paul Hastings Janofsky & Walker, Atlanta, Paul R. Elliott, phv, Richard L. Josephson, phv, Baker Botts, Houston, TX, Hugh Brown McNatt, McNatt Greene & Thompson, Vidalia, Daniel S. Reinhardt, Mary Kathleen McLemore, Troutman Sanders, Atlanta, Leamon R. Holliday, III, Ann Marie Ernst Stack, Roy E. Paul, Bouhan Williams & Levy, Savannah, Thomas Scott Carlock, Scott David Huray, Willard Tilden Bullock, IV, Carlock Copeland Semler & Stair, Atlanta, Peter M. Sfikas, phv, Bell Boyd & Lloyd, Chicago, IL, Robert E. Whitley, Whitley Hampton & Morgan, Atlanta, for Aventis Pastuer, Inc, individually and as Successor-in-interest to Connaught Laboratories, Inc., Pasteur Merieux and Pasteur Merieux Connaught, Wyeth fka American Home Products Corporation, Smithkline Beecham Corporation dba Glaxosmithkline, Armour Pharmaceutical Company, Johnson & Johnson, Eli Lilly and Company, Merck & Company, Inc, Georgia Power Company, Savannah Electric & Power Company, American Dental Association, Georgia Dental Association, defendants.

## ORDER

PANNELL, District Judge.

This matter is currently before this court on the plaintiff's motion for remand as well as several motions to dismiss.

The plaintiff brought this civil suit on behalf of herself and her minor child, alleging that her child suffers from the effects of heavy metal poisoning, specifically mercury poisoning, due to the conduct of the defendants. This action was originally filed in state court. The defendants removed the action to this court invoking both the diversity of citizenship jurisdiction and the federal question jurisdiction of this court. The plaintiff has challenged the defendants' assertions of jurisdiction with a motion to remand. Since a court may not hear or decide a case when it lacks subject matter jurisdiction, this court must first address the question of whether the action was properly removed to federal court. For reasons stated below, the court finds that this action was improperly removed, but remand is not available because the action is within the subject matter jurisdiction of this court and the defect in the removal was not challenged within thirty (30) days of the notice of removal.

Many of the plaintiff's allegations and claims relate to injuries allegedly sustained as a result of receiving a vaccine. She sues several "vaccine manufacturer defendants".[2] Federal law requires such claims to be brought before the United States Court of Federal Claims before any civil action can be maintained in any state or other federal court with respect to any injuries sustained. The plaintiff here has

---

**2.** Aventis Pasteur, Inc.; Wyeth; SmithKline Beecham Corporation; and Merck & Co. are collectively referred to as the vaccine manu- facturer defendants. The plaintiff's allegations make significant distinctions between these defendants.

not complied with that requirement. Thus, the vaccine manufacturer defendants' motion to dismiss is due to be granted.

The plaintiff has attempted to articulate a cause of action against Eli Lilly and Co. ("Lilly") that is not cognizable under Georgia law. The plaintiff asserts that Lilly developed and patented thimerosal. The plaintiff alleges that Lilly was thus required to warn all consumers of the alleged danger of using thimerosal, even when there is no allegation that Lilly manufactured, packaged, or sold the thimerosal in question. Georgia law does not impose a general duty on inventors, developers, or patent holders to warn the public of potential hazzards related to their creation. The duty to warn arises only when a special relationship is formed between the plaintiff and the defendant. The allegations of the complaint reveal no such special relationship. Accordingly, Lilly's motion to dismiss is due to be granted.

The plaintiff has also made allegations against the American Dental Association ("ADA"). The ADA challenges this court's exercise of personal jurisdiction and the sufficiency of the allegations contained in the plaintiff's complaint. Because this court finds that it lacks personal jurisdiction over the ADA, the ADA's motion to dismiss is due to be granted.

Thus, for the reasons set forth below, the plaintiff's motion to remand [Doc. No. 30–1] is **DENIED**; the vaccine manufacturers' motion to dismiss [Doc. No. 4–1] is **GRANTED**; the motion to dismiss by Eli Lilly and Co. [Doc. No. 5–1] is **GRANT-** ED; and the ADA's motion to dismiss [Doc. No. 6–1] is **GRANTED.**

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, a citizen[3] of South Carolina, brought this civil suit on behalf of herself and her minor child, alleging that her child suffers from the effects of heavy metal poisoning, specifically mercury poisoning, due to the conduct of the defendants. The plaintiff alleges that her son was exposed to mercury from three different sources: (1) from vaccination; (2) from his mother's dental amalgams; and (3) from power plant emissions.

The plaintiff's theory of this case is linked to her allegations that exposure to mercury caused her son a neurological injury. The plaintiff alleges that her son was exposed to mercury in three ways. First, she alleges that he was exposed to mercury *in utero* as a result of mercury entering her blood stream from the mercury containing dental amalgams which a dentist installed in her mouth.[4] Dental amalgams, which are often referred to as "silver" or fillings, do contain mercury which is released, over time. This released mercury can enter the blood stream of the patient. Second, the plaintiff alleges that her son was exposed to mercury via vaccine injections which contained a preservative called thimerosal. Lilly holds an expired patent over the chemical compound known generically as thimerosal. Thimerosal contains mercury. The Food and Drug Administration approved the presence of thimerosal in the vaccines administered to the plaintiff's son. Third,

---

**3.** The complaint alleges that the plaintiff and her son are both residents of the State of South Carolina. The notice of removal alleges that the plaintiff and her son are citizens of the State of South Carolina. The plaintiff has not refuted or otherwise controverted the alle-gation that she and her son are citizens of the State of South Carolina.

**4.** The plaintiff has not sued the unnamed dentist. Nor has she alleged that the dentist was or is a member of either the Georgia Dental Association or the ADA.

the plaintiff alleges that her son was exposed to mercury from emissions from power plants that burn fossil fuels. She contends that these airborne emissions contain heavy metals.

This action was originally filed in state court. The defendants removed the action, invoking both the diversity of citizenship jurisdiction and the federal question jurisdiction of this court. The plaintiff has challenged the defendants' assertions of jurisdiction with a motion to remand. In many respects this case is similar to several related cases this court previously remanded to state court. Those related cases were remanded because this court held that it lacked both diversity based and federal question jurisdiction.

## II. *LEGAL ANALYSIS*

### A. *Motion To Remand*

Civil actions brought in state courts may be removed by defendants to an appropriate district court of the United States when such actions fall within the original jurisdiction of the federal courts. 28 U.S.C. § 1441(a). Generally, there are two categories of cases within the original jurisdiction of this court which defendants may remove from state court.[5] Cases are properly removed based on either the satisfaction of the requirements of 28 U.S.C. § 1332 (diversity jurisdiction) or the presence of a federal cause of action (federal question jurisdiction). The defendants here invoke both the diversity jurisdiction and the federal question jurisdiction of this

court in support of their removal of this action.

 The court must look to the plaintiff's complaint to determine whether removal was appropriate. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994). Further, because this case was originally filed in state court and removed to federal court by the defendants, the defendants bear the burden of proving that federal jurisdiction exists. *See Williams v. Best Buy Company, Inc.,* 269 F.3d 1316, 1319 (11th Cir.2001); *and see Kirkland v. Midland Mortgage Co.,* 243 F.3d 1277, 1281 n. 5 (11th Cir.2001).

 Here, the defendants have invoked the diversity jurisdiction of this court as a basis for removal. Diversity jurisdiction exists where a suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000. *See* 28 U.S.C. § 1332(a). Here, the amount in controversy is in excess of $75,000. Further, complete diversity[6] between the parties exists. The plaintiff and her son are citizens of South Carolina. No defendant is a citizen of South Carolina. Thus, this court has subject matter jurisdiction over this case pursuant to Article III of the United States Constitution and 28 U.S.C. § 1332(a). The remand analysis, however, does not end here. Even when the court has subject matter jurisdiction, defects in the removal process can result in the remand of an improperly removed case.

---

5. The subject matter jurisdiction of this court is defined by the Constitution and by federal statutes. Article III of the United States Constitution confers subject matter jurisdiction on this court for cases which fall in the following categories: cases arising under the Constitution or the laws of the United States and its treaties; diversity cases; cases involving ambassadors, other public ministers and consuls; admiralty and maritime cases; cases in which the United States is a Party; controversies

between states or between a state and a citizen of another state; and controversies between a foreign state or citizen and a U.S. state or citizen.

6. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) ("Diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff").

An action invoking this court's diversity jurisdiction may be removed to this court "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). This requirement is commonly referred to as the forum defendant rule. Here, properly joined[7] and served defendants are citizens of Georgia. Thus, it appears that removal was improper. Nevertheless, "a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). The plaintiff strongly, and correctly, insists that she challenged the subject matter jurisdiction of this court almost from the moment of removal. She did not, however, move for remand within 30 days of the filing of the notice of removal. The question, therefore, is whether the provisions of § 1441(b) affect the subject matter jurisdiction of this court. If the forum defendant rule is jurisdictional, then no district court may adjudicate an action removed by a resident defendant on the basis of diversity jurisdiction. If the forum defendant rule is not jurisdictional, then plaintiffs may waive the forum defen-

dant rule and district courts may hear cases removed by resident defendants on the basis of diversity jurisdiction.

The question of whether the forum defendant rule is jurisdictional is an unsettled one. Though the circuits are split, the court notes the great weight of authority favoring the conclusion that a removal in violation of § 1441(b) is subject to the 30–day time limit established by § 1447(c).[8] There does not appear to be any controlling authority on this question before this court. *See Snapper, Inc. v. Redan,* 171 F.3d 1249, 1258 (11th Cir.1999) (mentioning the § 1441(b) issue in performing a thorough analysis of the significance of the 1996 amendment to § 1447(c)). *Snapper* strongly suggests that this circuit follows the majority rule. This strong suggestion in *dicta,* however, does not represent controlling authority on this point of law.

 This court hereby adopts the majority rule and joins the courts holding the forum defendant rule of § 1441(b) to be a "defect other than lack of subject matter jurisdiction" as contemplated by § 1447(c). The forum defendant rule prohibits a forum defendant from removing to federal court an action which is within the subject matter jurisdiction of the federal court. It

---

7. By previous order in a number of related cases, the court ruled that the defendants' assertions of fraudulent joinder with respect to the Georgia defendants were incorrect. The same analysis controls in this action. The court notes that Georgia Power Company was dismissed from this suit. The same analysis that applied to Georgia Power Company applies to Savannah Electric and Power Company.

8. *See also Hurley v. Motor Coach Industries, Inc.,* 222 F.3d 377, 379–80 (7th Cir.2000) (noting circuit split and holding forum defendant rule to be nonjurisdictional); *Handelsman v. Bedford Village Associates, Ltd.,* 213 F.3d 48, 50 n. 2 (2d Cir.2000) (citing *Hamilton v. Aetna Life & Cas. Co.,* 5 F.3d 642, 643 (2d Cir.1993)); *Korea Exch. Bank v. Trackwise*

*Sales Corp.,* 66 F.3d 46, 50 (3d Cir.1995) (forum defendant rule nonjurisdictional); *In re Shell Oil Co.,* 932 F.2d 1518, 1521–23 (5th Cir.1991) (holding that the presence of defendants who are citizens of the forum state is a procedural defect); *Farm Constr. Serv. v. Fudge,* 831 F.2d 18, 21–22 (1st Cir.1987); *Handley–Mack Co. v. Godchaux Sugar Co.,* 2 F.2d 435, 437 (6th Cir.1924) (forum defendant rule nonjurisdictional); *Taylor v. St. Louis S.W. Ry.,* 128 F.R.D. 118, 120 (D.Kan. 1989) (although case improperly removed to federal court in violation of § 1441(b), plaintiffs' motion to remand denied because made after the 30–day time limit of § 1447(c)). *But see Hurt v. Dow Chem. Co.,* 963 F.2d 1142, 1145–46 (8th Cir.1992) (holding that the presence of a resident defendant is a jurisdictional defect).

is not a limitation on the subject matter jurisdiction of the court. When a forum defendant files a notice of removal invoking the diversity jurisdiction of the district court, the removal is defective because it does not comply with § 1441(b). Accordingly, a plaintiff's motion to remand based on the defect must be filed within the 30–day time limit set forth in § 1447(c). Here, there is no dispute that the plaintiff's motion to remand was filed outside the 30–day window. Therefore, the plaintiff's motion to remand is due to be denied.

### B. *Motions To Dismiss*

There are currently three separate motions to dismiss before the court. The vaccine manufacturer defendants have filed a motion to dismiss all claims against them. Lilly has filed a motion to dismiss the claims against it. Likewise, the ADA has moved for dismissal of the claims against it. Taken as a whole, all of the defendants, save the Georgia Dental Association and the Savannah Electric and Power Company, have moved this court to dismiss the plaintiff's complaint.

#### 1. *Claims Against The Vaccine Manufacturer Defendants*

The National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa–1, *et seq.*, states in relevant part:

No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death ... unless a petition has been filed in accordance with section 300aa–16 of this title, for compensation under the Program for such injury or death ...

42 U.S.C. § 300aa–11(a)(2)(A). Whenever a civil action is brought in violation of the above provision, the presiding court "shall dismiss the action." 42 U.S.C. § 300aa–

11(2)(B). Here, the plaintiff has not filed a petition in accordance with § 300aa–16. Therefore, if her claims arise from a "vaccine-related" injury, this court must dismiss those claims.

The plaintiff forcefully argues that her claims do not arise from a vaccine-related injury as contemplated by the Vaccine Act. Instead, she insists, her claims arise from injuries sustained due to exposure to the mercury containing preservative thimerosal. The plaintiff contends that thimerosal is not part of the vaccine. Thimerosal, she contends, is an "adulterant or contaminant." Injuries sustained from exposure to adulterants or contaminants are not covered by the Vaccine Act. 42 U.S.C. § 300aa–33(5).

After careful review of the statute, the authorities cited by the parties, and the arguments presented by counsel, the court is compelled to dismiss the plaintiff's claims against the vaccine manufacturer defendants. Thimerosal is not an adulterant or contaminant as those terms are used in the statute. The language of the statute is clear and unambiguous. Adulterant and contaminant, as used in the statute, refer to something which makes the vaccine corrupt, infected, impure, unfit for its intended use, or otherwise altered from its original form. Thimerosal cannot be viewed as an adulterant or contaminant because it was an intended and approved component of the vaccines themselves. To read the statute in the manner suggested by the plaintiff would dramatically undermine the purpose of the act. *See Schafer v. American Cyanamid Co.,* 20 F.3d 1, 2 (1st Cir.1994) (The Vaccine Act is intended "to provide compensation to those harmed by childhood vaccines outside the framework of traditional tort law.").

In the instant case, thimerosal was an intended component of the vaccine. The presence of thimerosal in the vaccine was

intended to ensure the efficacy of the vaccine. Without thimerosal, the medical purpose of the vaccines would have been compromised. When choosing a preservative, the manufacturers likely had other options. They chose thimerosal and the FDA approved the choice. If thimerosal, or some other preservative, had not been used, the vaccines would have been less effective or even useless. Thus, the presence of the preservative did not serve to contaminate or adulterate the vaccines. To the contrary, thimerosal was a constituent component of the vaccines. Asserting a thimerosal-related claim is the equivalent of asserting a vaccine-related claim. Accordingly, the court finds that the plaintiff's claims alleging injuries arising from exposure to thimerosal are "vaccine-related" injuries. Thus, the plaintiff's claims against the vaccine manufacturer defendants are due to be dismissed. Accordingly, the vaccine manufacturer defendants' motion to dismiss is due to be granted.[9]

### 2. Claims Against Lilly

With respect to the instant case, Lilly is not a vaccine administrator or manufacturer. There has been no suggestion that Lilly produced the thimerosal in the vaccines given to the plaintiff's son. If Lilly were a manufacturer, the claims against Lilly would be dismissed in accordance with the provisions of the Vaccine Act. Thus, Lilly's motion to dismiss should be granted only if the complaint fails to state a claim upon which relief can be granted against Lilly.

A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all factual allegations set forth in the complaint are true. *See United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, in determining whether to grant a Rule 12(b)(6) motion, the court only considers the allegations in the complaint, which it liberally construes in the light most favorable to the plaintiffs. *See Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen,* 76 F.3d 347, 349 (11th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, a motion to dismiss will be denied unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Luckey v. Harris,* 860 F.2d 1012, 1016 (11th Cir.1988); *see also Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In the latter instance, the court is authorized to dismiss the complaint "on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

Accordingly, this court applies the traditional pleading requirement of Fed. R.Civ.P. 8(a) to the instant motion to dismiss, requiring only " 'a short and plaint statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80.

▆▆▆ The plaintiff's primary allegations against Lilly sound in negligence. Specifically, the plaintiff contends that Lilly failed to warn consumers of the alleged

---

**9.** The dismissal of the claims against the vaccine manufacturer defendants is without prejudice. The claims were simply brought in the wrong court.

dangers of thimerosal. Georgia law controls this analysis. Pursuant to Georgia law, in order to recover for negligence, a plaintiff must show "(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Bradley Ctr., Inc. v. Wessner,* 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982). Lilly focuses its argument on the first element of the plaintiff's purported negligence claim.

 Georgia law occasionally imposes an affirmative duty to warn on potential defendants. With respect to the allegations of the instant complaint, the court finds a basis in Georgia law for a duty to warn of a dangerous product.

> While a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses, the manufacturer of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger. Breach of these different duties hence gives rise to separate and distinct claims. Thus, a duty to warn can arise even if a product is not defective.

*Moore v. ECI Management,* 246 Ga.App. 601, 606, 542 S.E.2d 115, 120 (2000) (internal citations and punctuation omitted). Thus, manufacturers have a duty to warn consumers of potential dangers associated with the use of their product. The plaintiff has not directed the court to any authority expanding this duty beyond the manufacturer of the product in question. The chain of commerce that begins with the manufacturer and ends with the final

consumer involves a series of special relationships. These special relationships provide a basis for the affirmative duty to warn.

The duty proposed by the plaintiff does not arise from any special relationship. Instead, the plaintiff alleges the existence of an affirmative duty to warn which arises merely from being the developer, inventor, or patent holder of a product or design. The plaintiff reasons that Lilly, as the holder of the patent on thimerosal, knew that other companies would copy thimerosal when the patent expired. The plaintiff further reasons that such knowledge on the part of Lilly gave rise to an ongoing duty to warn the purchasers and recipients of such copied products manufactured by other companies. The plaintiff has not cited and the court has not found any authority supporting the existence of such a duty. Accordingly, the court concludes that no such duty exists under Georgia law. Thus, the plaintiff's negligence claim against Lilly is not cognizable under Georgia law and, as such, is due to be dismissed.

 The plaintiff's emotional distress claim against Lilly is likewise flawed. "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Lee v. State Farm Mut. Ins. Co.,* 272 Ga. 583, 584, 533 S.E.2d 82, 84 (2000) (quoting *Ryckeley v. Callaway,* 261 Ga. 828, 412 S.E.2d 826 (1992)). A careful review of the above standard reveals that the plaintiff's claim is flawed in two respects. First, as set forth above, the plaintiff has failed to adequately allege negligent conduct. Second, the plaintiff has failed to allege any impact that can reasonably be attributed to the conduct of Lilly. Thus, the allegations of the complaint do not support a cause of action

against Lilly for emotional distress. Accordingly, Lilly's motion to dismiss is due to be dismissed.[10]

### 3. ADA's Motion To Dismiss

The ADA challenges this court's exercise of personal jurisdiction. In general, this court must engage in a two step inquiry to determine whether the exercise of personal jurisdiction is appropriate. First, the court must examine the Georgia long-arm statute to determine whether that statute confers jurisdiction over the defendant. If the Georgia statute confers jurisdiction, the court proceeds to the second step. The second step requires the court to determine whether the exercise of personal jurisdiction comports with the Due Process requirements of the federal Constitution. See Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc., 148 F.3d 1355 (Fed.Cir.1998). The Georgia long-arm statute is construed to confer personal jurisdiction to the greatest extent permitted by federal law. See First United Bank of Mississippi v. First National Bank of Atlanta, 255 Ga. 505, 340 S.E.2d 597 (1986). Accordingly, this court's inquiry is reduced to an analysis of whether the assertion of personal jurisdiction comports with the Due Process requirements of federal law.

The exercise of personal jurisdiction must comport with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S.

310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As a starting point, the issue turns on whether the ADA had sufficient minimum contacts with the State of Georgia "such that it would reasonably anticipate being haled into court" here. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Contacts are relevant to the analysis only when they are "purposefully directed at the forum or its residents." Red Wing, 148 F.3d at 1359. Nevertheless, a single act can be sufficient to confer specific jurisdiction over a defendant where the cause of action arises out of or relates to the specific contact in question. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

A defendant may be subject to general jurisdiction in a given forum where its activities in the forum are "continuous and systematic." International Shoe, 326 U.S. at 320, 66 S.Ct. at 160. The actions of third parties directed at the defendant are not appropriate for inclusion in this analysis. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Thus, only actions by the defendant which are "purposefully directed at the forum or its residents" may be considered. Red Wing, 148 F.3d at 1359.

In light of the above standards, the court finds that the ADA is not subject to the personal jurisdiction of this court. The plaintiff does not sufficiently allege [11] that the ADA either manufactured or sold

---

**10.** The plaintiff's claims against Lilly are dismissed without prejudice. As Lilly pointed out, the plaintiff's allegations against Lilly are broad and conclusory. If the plaintiff has more specific facts showing a direct link between the harm alleged and Lilly, she should be able to articulate such a claim in a subsequent action.

**11.** The plaintiff's broad allegations that, inter alia, the "dental defendants" manufactured, inspected, marketed, and sold "the amal-

gams" are conclusory and unsupported by sufficient factual allegations. The allegations fail to identify which of the "dental defendants" performed which alleged task. Moreover, the allegations do not provide sufficient factual allegations to support the allegation that the ADA manufactured the amalgams in question. As noted, the complaint does not identify the dentist who installed her amalgams nor does it allege where the unnamed dentist acquired the amalgams. The court cannot indulge such unsupported allegations.

 

the dental amalgams she allegedly received. Neither has she alleged that her treating dentist was a member of the ADA or was in any manner influenced by the ADA at the time the amalgams were installed. Upon careful review, it does not appear that the ADA is alleged to have directly participated in any manner in the chain of events that led to the dental amalgams being installed in the plaintiff. Accordingly, the court finds that the ADA is not subject to specific jurisdiction.

The ADA does not have sufficient continuous and systematic contacts with Georgia to support a finding that the ADA is subject to general jurisdiction in this forum. The ADA is a voluntary association whose activities are centered around Chicago, Illinois. The ADA's contacts with Georgia are generally initiated by member citizens of Georgia. The ADA is not licenced to transact business in Georgia and does not have a designated agent for service of process in Georgia. It appears that the ADA has taken careful steps not to subject itself to the jurisdiction of foreign jurisdictions. The tri-partite dental association structure allows the ADA to avoid employing citizens of Georgia while deriving significant financial benefit from citizens of Georgia. Nevertheless, the contacts revealed by the record do not support a finding that the ADA is subject to general jurisdiction in Georgia. Accordingly, because it has properly objected to the jurisdiction of this court and this court has found that it lacks jurisdiction, the ADA's motion to dismiss is due to be granted.[12]

### III. *CONCLUSION*

For the above and foregoing reasons, the plaintiff's motion to remand [Doc. No.

30–1] is **DENIED**; the vaccine manufacturers' motion to dismiss [Doc. No. 4–1] is **GRANTED**; the motion to dismiss by Eli Lilly and Co. [Doc. No. 5–1] is **GRANTED**; and the ADA's motion to dismiss [Doc. No. 6–1] is **GRANTED**. Except for the Georgia Dental Association and the Savannah Electric and Power Company, this action is dismissed against all other defendants without prejudice.

---

**12.** Because the court has determined that it lacks jurisdiction over the person of the ADA, the court does not address the sufficiency of the plaintiff's allegations against the ADA.

Thus, there has been no adjudication on the merits and this action is dismissed without prejudice as to the ADA.